UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MGM GRAND HOTEL,<br><br>　　　　Plaintiff<br><br>v.<br><br>KEVIN CHANG SHENG LONG,<br><br>　　　　Defendant | Case No.: 2:21-cv-01476-APG-NJK<br><br>**Order Granting in Part Plaintiff's Motion for Summary Judgment and Denying Motion to Strike as Moot**<br><br>[ECF Nos. 22, 40] |

　　　　Plaintiff MGM Grand Hotel sues defendant Kevin Chang Sheng Long to recover on two casino markers Long signed and has not fully paid. MGM asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, conversion, unjust enrichment, and violation of Nevada Revised Statutes (NRS) § 41.620. ECF No. 1 at 7-9. MGM moves for summary judgment on all its claims except unjust enrichment. MGM argues that there is no dispute that Long signed the markers, two of the markers were returned by Long's bank for insufficient funds, and Long has not paid the markers in full after MGM demanded payment. Long opposed the motion and attached his affidavit to his response. Long thereafter invoked his Fifth Amendment rights in discovery responses because he is facing criminal charges related to the unpaid markers. As a result, MGM moves to strike his affidavit. Long did not oppose the motion to strike.

　　　　I grant MGM's motion for summary judgment in part and deny its motion to strike as moot. Additionally, I direct MGM to advise how it plans to proceed on its remaining claims for unjust enrichment and breach of the covenant of good faith and fair dealing.

# I. BACKGROUND

In September 2018, Long applied for a line of casino credit at MGM. ECF No. 22 at 14, 19-20. The credit agreement provides that a casino marker[1] "does not become a negotiable instrument until such time as [MGM] inserts information necessary to transform the marker into a negotiable instrument, which time [Long] agree[d] may be subsequent to the date [he] signed the marker." *Id.* at 20. To that end, Long agreed that MGM could complete information on casino markers, including the payee, the date, and the name and account numbers of Long's bank. *Id.* Long also agreed to pay collections costs, including attorney's fees. *Id.* Nevada law governs the credit agreement. *Id.*

In October 2018, Long executed five casino markers at MGM:

1. No. 2786376 in the amount of $5,053,000.00 on October 13, 2018;

2. No. 2786625 in the amount of $2,995,000.00 on October 17, 2018;

3. No. 2786626 in the amount of $412,400.00 on October 17, 2018;

4. No. 2788177 in the amount of $100,000.00 on October 30, 2018; and

5. No. 2788181 in the amount of $100,000.00 on October 30, 2018.

*Id.* at 14; ECF No. 28 at 17, 21-24. Long thus owed $8,660,400.00 in total.

Between October 25, 2018 and November 30, 2020, Long made five payments totaling $1,864,675.00:

1. $64,675.00 in gambling chips on October 25, 2018;

2. $200,000.00 in gambling chips on November 30, 2018;

3. $1,000,000.00 on January 27, 2019;

---

[1] A marker is a "credit instrument," which is "valid and may be enforced by legal process." NRS § 463.368(1); *see also Morales v. Aria Resort & Casino, LLC*, 995 F. Supp. 2d 1176, 1180 (D. Nev. 2014).

   4. $500,000.00 on February 27, 2019; and

   5. $100,000.00 on November 30, 2020.

ECF Nos. 22 at 14; 28 at 17-18, 21.  MGM applied the payments to pay off the last three markers in full and applied the remaining $1,252,275.00 to the first two markers, leaving a balance of $6,795,725.00 on the first two markers. ECF No. 28 at 18.

   In January 2021, MGM requested Long pay the balance owed or it would present the markers to his bank for payment. ECF No. 22 at 25-26.  In February 2021, MGM attempted to negotiate the $5,053,000.00 marker, but it was returned for "not sufficient funds." *Id.* at 14-15, 22-23.  MGM thereafter attempted to negotiate the other, lesser marker in the amount of $2,995,000.00, but it also was returned for insufficient funds. *Id.* at 23.  MGM then sent certified letters to Long at two different addresses requesting payment on the markers in the amount of $6,795,725.00. *Id.* at 15, 27-30.  Long has not paid the balance.

   In a declaration, Long states that during his stay in Las Vegas, he was accompanied by MGM casino hosts who provided him complimentary alcohol and encouraged him to drink alcohol at dinners, nightclubs, and in his own room. ECF No. 23-1 at 2.[2]  Long states that he was "intoxicated for the majority of [his] stay with MGM" and that while he was intoxicated, the casino hosts encouraged him to gamble. *Id.* at 2-3.  He acknowledges that he signed the markers and that he owed MGM $1,864,675.00, which he paid. *Id.*  But he disputes the enforceability of the markers due to his intoxication, and states that the amount of credit MGM offered him was "excessive and far beyond what [he] would agree to in a clear-headed, rational state of mind." *Id.*  Long also disputes the validity of two of the markers because he "was not in Las Vegas on the days those instruments are dated." *Id.*

---

[2] MGM moves to strike this declaration.

3

According to Jennifer McEwin, Executive Director of Credit and Collections for MGM, Nevada casinos "generally do not date credit instruments until they are ready to be deposited" to avoid the instruments becoming "stale-dated before they are presented to a patron's bank for payment." ECF No. 28 at 18. There is no evidence Long challenged the markers' enforceability based on intoxication or any other basis until this lawsuit. *See id.* at 18-19.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

### A. Breach of Contract

MGM argues no genuine dispute remains that Long executed five markers totaling $8,660,400.00; that the markers are valid, enforceable contracts; and that Long has failed to

repay the full amount of the markers upon demand.  MGM contends there is a remaining balance of $6,795,725.00.

Long responds that during his stay at the MGM, the casino hosts encouraged him to drink and provided him copious amounts of free alcohol.  He concedes that he signed the markers and paid $1,864,675.00.  But he contends that because he was intoxicated, he lacked capacity to contract and so disputes the remainder of the debt.  He also argues that MGM has not produced proof of $512,400.00 of the alleged debt.  In his affidavit attached to his response, Long disputes that he was in Las Vegas on the days that two of the markers are dated.

MGM replies that the evidence shows five markers totaling $8,660,400.00, from which it subtracted Long's $1,864,675.00 payments that satisfied three of those markers and $1,252,275 of the remaining two markers.  MGM also argues that the fact that the markers were dated on days when Long was not in Las Vegas does not matter because casinos generally do not date the credit instruments until they are ready to be deposited.  MGM contends that this practice is allowed under both Nevada law and the credit application that Long signed.  As to the intoxication defense, MGM argues that Long waived it by failing to raise it earlier, he later ratified the debt by making partial payments and failing to timely disaffirm the debts, and his affidavit does not state he was so intoxicated that he lacked capacity to contract.

The plaintiff in a breach of contract action must show "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006).  Under Nevada law, intoxication may render a person incapable of having the capacity to form a valid contract. *Seeley v. Goodwin*, 156 P. 934, 937 (Nev. 1916).  The Supreme Court of Nevada has adopted the Restatement (Second)

of Contracts § 16 regarding incapacity to contract due to intoxication. *LaBarbera v. Wynn Las Vegas, LLC*, 422 P.3d 138, 141 (Nev. 2018). Under the Restatement,

> [a] person incurs only voidable contractual duties by entering into a transaction if the other party has reason to know that by reason of intoxication
>  (a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or
>  (b) he is unable to act in a reasonable manner in relation to the transaction.

Restatement (Second) of Contracts § 16. However, the intoxicated person has a duty "to promptly disaffirm the contract." *LaBarbera*, 422 P.3d at 141. Consequently, the intoxicated person "will be deemed to have ratified the contract unless within a reasonable time after becoming sober he takes steps to disaffirm it." *Seeley*, 156 P. at 936 (quotation omitted); *see also* Restatement (Second) of Contracts § 16 cmt. c ("On becoming sober, the intoxicated person must act promptly to disaffirm [the contract].").

The party asserting he lacked capacity to contract because he was intoxicated "must present convincing proof of claims that due to intoxication at the time of making a contract, the party was bereft of mental faculties." *LaBarbera*, 422 P.3d at 141 (quotation omitted). "When a party to a contract was lacking in mental capacity at the time of execution by reason of drunkenness, proof of a subsequent ratification must be clear and convincing." *Id.* (quotation omitted).

Even viewing the facts in the light most favorable to Long, and even considering his declaration that MGM seeks to strike, no genuine dispute remains that there is clear and convincing evidence that Long ratified the contract both by his affirmative conduct and by his failure to disaffirm the contract within a reasonable time after he was sober. Even assuming that Long was so intoxicated he lacked the capacity to execute the markers, Long later ratified the markers by paying them. Although Long now disputes the two largest markers, he paid

$1,252,275.00 beyond the balance owed on the markers he does not dispute. Long made payments in January and February 2019, and another in November 2020, long after his allegedly alcohol-fueled stay in October 2018. By paying on the markers, he ratified them.

Additionally, there is no evidence that Long disaffirmed the markers at any time between October 2018 when he signed them and approximately three years later when he filed his answer in this case. ECF No. 18.[3] Long therefore did not disaffirm the markers within a reasonable time after becoming sober.

Finally, Long disputes that he was in Las Vegas when two of the markers were dated. However, Long agreed in the credit agreement that MGM could fill in information on the markers, including the date. And McEwin testified that casinos generally do not date credit instruments until they are ready to be deposited. That is permissible under Nevada law. *See* NRS § 463.368(2) (stating that a casino may accept "an incomplete credit instrument . . . and may complete the instrument as is necessary for the instrument to be presented for payment"). The evidence shows Long was in Las Vegas when the two markers were executed on October 13 and 17, 2018. ECF No. 23-1 at 2 (Long stating that he was "in Las Vegas from September to November of 2018").

Long does not dispute that he has not paid the markers. He disputes the amount he owes, however, contending that MGM has not proved the total amount. However, MGM has presented evidence of the date and amount of each marker and each of Long's payments. Consequently, no

---

[3] Long's answer does not assert that he lacked capacity to form the contract due to intoxication. Rather, Long raised this issue for the first time in his opposition to MGM's summary judgment motion, filed in February 2022. ECF No. 23. However, even if I considered the answer as the first time Long asserted incapacity, Long failed to disaffirm the debts within a reasonable time.

genuine dispute remains that the markers are valid contracts, Long breached them, and he owes $6,795,725.00.

I therefore grant MGM's motion for summary judgment on its breach of contract claim. Because MGM prevails even considering Long's affidavit, I deny as moot MGM's motion to strike.[4]

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

To prevail on a claim for contractual breach of the implied covenant of good faith and fair dealing, the plaintiff must show that (1) the defendant "literally complied" with the contract's terms and (2) the defendant nonetheless deliberately contravened the contract's "intention and spirit." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 & n.6 (Nev. 1991). MGM does not allege in the complaint or argue in its motion that Long complied with the contract's terms, nor does it identify some means beyond literal breach by which Long violated the contracts' intention and spirit. *See* ECF Nos. 1 at 8 (alleging that Long breached the implied covenant "by, among other things failing to pay" the markers); 22 at 6-7 (arguing that because Long did not repay despite demands, he did not act in good faith). I therefore deny MGM's motion for summary judgment on this claim.

### C. Conversion

Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *M.C. Multi-Fam. Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 193 P.3d 536, 542 (Nev. 2008) (quotation omitted). Long did not specifically respond to this portion

---

[4] Long did not oppose the motion to strike, and I therefore could grant it as unopposed under LR 7-2(d).

of MGM's motion beyond the arguments he raised in response to the breach of contract claim. Consequently, Long does not point to evidence or argue that he did not exercise wrongful dominion or control over MGM's property. I therefore grant MGM's motion for summary judgment on this claim.

### D.  Nevada Revised Statutes § 41.620

MGM argues that Long violated NRS § 41.620 by signing the markers, having insufficient funds at the drawing bank to pay, and then refusing to pay after MGM demanded payment. Long did not respond beyond his argument in response to the breach of contract claim that the markers are unenforceable.

Under NRS § 41.620(1),

> any person who:
>
> (a) Makes, utters, draws or delivers a check or draft for the payment of money drawn upon any financial institution or other person, when that person has no account with the drawee of the instrument or has insufficient money, property or credit with the drawee to pay . . .
>
> and who fails to pay the amount in cash to the payee, issuer or other creditor within 30 days after a demand therefor in writing is mailed to the person by certified mail, is liable to the payee, issuer or other creditor for the amount of the check, draft or extension of credit, and damages equal to three times the amount of the check, draft or extension of credit, but not less than $100 nor more than $500.

Long executed five markers and failed to repay two of them. There is no genuine dispute that when MGM attempted to collect on the unpaid markers, they were returned for insufficient funds. There also is no dispute that MGM sent certified letters to Long demanding payment, but Long has not paid the two markers. Consequently, I grant summary judgment in MGM's favor on its claim under NRS § 41.620(1). As a result, MGM is entitled to additional statutory damages of $500.00 per unpaid marker, for a total of $1,000.00.

### D. Prejudgment and Post-Judgment Interest

MGM argues that it is entitled to prejudgment and post-judgment interest under NRS § 99.040(1). Long did not respond.

"Prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism." *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007). Where, as here, a federal court sits in diversity, "[s]tate law generally governs awards of prejudgment interest . . . ." *Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*, 513 F.3d 949, 961 (9th Cir. 2008).

NRS § 99.040(1)(a) provides:

> [w]hen there is no express contract in writing fixing a different rate of interest, interest must be allowed at a rate equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January 1 or July 1, as the case may be, immediately preceding the date of the transaction, plus 2 percent, upon all money from the time it becomes due, in the following cases . . . [u]pon contracts, express or implied, other than book accounts. . . . .

Long does not dispute that if MGM prevails, it is entitled to prejudgment and post-judgment interest. Nor does he dispute MGM's calculations. I therefore grant summary judgment in MGM's favor that it is entitled to prejudgment and post-judgment interest.

However, MGM's calculations are not current. Additionally, because MGM still has unresolved claims for unjust enrichment and breach of the covenant of good faith and fair dealing, I cannot enter final judgment. I therefore direct MGM to either (1) dismiss its two remaining claims and prepare a proposed form of judgment reflecting the total amount due as of September 1, 2022, or (2) advise the court how it intends to proceed on its claims for unjust enrichment and breach of the covenant of good faith and fair dealing.

/ / / /

## III. CONCLUSION

I THEREFORE ORDER that plaintiff MGM Grand Hotel's motion for summary judgment **(ECF No. 22) is GRANTED in part**. The motion is granted as to MGM Grand Hotel's claims for breach of contract, conversion, and violation of Nevada Revised Statutes § 41.620(1).

I FURTHER ORDER that by August 29, 2022, MGM Grand Hotel shall either (1) dismiss its two remaining claims and prepare a proposed form of judgment reflecting the total amount due as of September 1, 2022, or (2) advise the court how it intends to proceed on its claims for unjust enrichment and breach of the covenant of good faith and fair dealing.

DATED this 22nd day of August, 2022.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE